Filed 7/18/22  In re Stevie P. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re STEVIE P., a Person Coming Under the Juvenile Court Law. | B315312 |
| | (Los Angeles County Super. Ct. No. 18CCJP04681B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>TINA H.,<br><br>     Defendant and Appellant | |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Order denying request for modification of order is affirmed.  Order terminating parental rights is conditionally affirmed and remanded.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawn Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Tina H., mother of now-eight-year-old Stevie P., appeals the juvenile court's September 10, 2021 order denying her petition seeking reinstatement of family reunification services (Welf. & Inst. Code, § 388)[1] and the court's order the same day terminating parental rights (§ 366.26). Tina contends the juvenile court erred in concluding additional reunification services were not in Stevie's best interest and the beneficial parental relationship exception to termination (§ 366.26, subd. (c)(1)(B)(i)) did not apply. We affirm the order denying Tina's request for reinstatement of reunification services. We conditionally affirm the order terminating parental rights and remand the matter to the juvenile court for the court and the Los Angeles County Department of Children and Family Services to comply with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 USC § 1901 et seq.) (ICWA) and related California law.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Sustained Section 300 Petition and Disposition*

On October 1, 2018 the juvenile court sustained an amended dependency petition pursuant to section 300, subdivisions (a) and (b)(1), finding that Tina and Gino P., Tina's

_____

[1] Statutory references are to this code unless otherwise stated.

husband of more than 30 years and the father of her two children, Stevie and Sonny P.,[2] had a history of engaging in violent physical altercations in their children's presence and that such domestic violence, and Tina's failure to protect the children, placed Stevie and Sonny at substantial risk of serious physical harm.[3] The court also sustained allegations Gino had a history of abusing, and currently abused, alcohol; such substance abuse placed his children at substantial risk of serious physical harm; and Tina failed to protect the children from Gino's substance abuse (§ 300, subd. (b)(1)). The court declared Stevie and Sonny dependent children of the court, removed them from Gino's custody and ordered them released to Tina's sole custody with family maintenance services, including individual therapy and counseling to address domestic violence. The court stayed the aspect of its order releasing the children to Tina pending confirmation that Gino had moved out of the family home. The court ordered family enhancement services for Gino with monitored visitation.

On October 12, 2018, after the Department reported Gino had not moved out of the family home and it appeared neither he

---

[2]    Sonny, who turned 18 last month, is not the subject of Tina's appeal.

[3]    As sustained, the court found Tina and Gino had a long history of domestic violence; in June and July 2018 Gino repeatedly struck Tina in the head and face causing bruising; on prior occasions he placed her in a headlock and threw a candle at her while Tina scratched Gino; and Tina failed to protect the children from Gino. The court dismissed allegations pursuant to section 300, subdivisions (a) and (j), that Gino had punched Sonny nonaccidentally in the face when Sonny intervened in a physical altercation between his parents.

nor Tina had any intention of complying with that aspect of the court's order, the court vacated its order releasing the children to Tina's custody and issued a new order removing the children from Tina's custody and placing them under the custody and supervision of the Department. The court ordered family reunification services for Tina with monitored visitation. Stevie and her brother were ordered suitably placed with their maternal aunt.

2. *The Review Hearings*

a. *The six-month review hearing*

At the April 12, 2019 six-month review hearing (§366.21, subd. (e)) the court found Tina and Gino in partial compliance with the case plan and continued family reunification services for both with monitored visitation.

b. *The 12-month review hearing*

At the November 8, 2019 12-month review hearing (§ 366.21, subd. (f)) (the hearing had been twice continued from the original October 11, 2019 date) the Department reported Tina had completed her domestic violence program and was participating in counseling. However, Tina continued to reside with Gino. Tina told the Department she stayed with Gino for safety reasons because they had become homeless since the six-month review hearing and she did not feel safe going on her own to a shelter. The court found Tina in substantial compliance with her case plan and continued family reunification services for her with monitored visitation and discretion to the Department to liberalize. The court terminated Gino's family reunification services after finding he had not participated in any court-ordered programs since April 2019 and had stopped communicating with the Department.

c. *The 18-month review hearing*

In its January 21, 2020 report prepared for the January 27, 2020 18-month review hearing (§366.22), the Department stated Tina was actively enrolled and participating in individual counseling and parenting classes. Tina told the Department in October 2019 she had left Gino "for good" and moved in with a friend. Tina stated she realized she needed to put her children first by leaving her violent husband and focusing on reunifying with her children. The Department assisted Tina with finding housing. Beginning November 2019 Tina began visiting with Stevie more regularly, and on January 9, 2020 the Department liberalized those visits to allow Tina unmonitored visitation. The Department reported Tina had made "considerable progress" and believed three more months of reunification services would allow Tina to complete counseling, obtain stable housing and allow for the safe return of the children to her care.

On January 27, 2020 the court found Tina in substantial compliance with the case plan, referred Tina for a housing assessment and granted the Department discretion to allow Stevie and her brother an extended visit with Tina within five court days of her securing appropriate housing. The court continued the 18-month review hearing to April 27, 2020.

On January 29, 2020 Tina's adult daughter Stephanie P. told the Department she had recently seen Tina and believed Tina, like Gino, was using illicit drugs. When the Department requested Tina submit to a random drug test, Tina initially made excuses, then refused to do so. In addition, Stephanie reported Tina was still with Gino and, based on Tina's prior conduct and statements, she did not believe Tina would ever leave him.

A paternal aunt reported seeing Tina with Gino in February 2020. Both the paternal aunt and the maternal aunt stated Tina routinely stayed with Gino at least one day during the week; a paternal uncle stated Gino was still abusing illicit drugs; and both the maternal aunt and paternal aunt feared, based on Tina's erratic behavior and sudden weight loss, that Tina, too, was using illicit substances. Sonny also reported in February 2020 that he had heard Gino's voice in the background when speaking to Tina on the telephone. (Tina denied having any contact with Gino.)

In March 2020 Tina's therapist reported Tina had stopped attending therapy in January 2020 and did not return telephone calls. As a result of this lack of contact, the therapist was prepared to close Tina's case.

On April 27, 2020, based on the information it had obtained since the court's January 27, 2020 order, the Department filed a last minute information for the court changing its previous recommendation: "Based on the 21-month time frame, the mother's failure to continue with services, and the father's previous [family reunification services] termination," the Department recommended family reunification services be terminated and the matter set for a section 366.26 selection and implementation hearing.

A contested 18-month review hearing, which had been continued several times, occurred on September 30, 2020. The Department reported Tina had not attended counseling since January 2020; refused to submit to a single random, albeit voluntary, drug test; and had visited Stevie infrequently, if at all. The Department recommended the court terminate Tina's family reunification services and set a section 366.26 selection and

6

implementation hearing. Stevie's counsel joined the Department's recommendation.

Tina did not appear at the hearing. The court found notice was proper and heard argument from her counsel, who objected to the Department's recommendation of terminating family reunification services.

The court terminated Tina's family reunification services and set a selection and implementation hearing for February 3, 2021. The court explained, "Mother had a case plan. She failed to engage. Her participation was minimal at best and her cooperation was lacking; her progress was episodic. And her visitation, although arranged by the Department, was again, infrequent."

3. *The Section 388 Petition for Reinstatement of Reunification Services and the 366.26 Selection and Implementation Hearing*

On February 3, 2021, the same day as the scheduled selection and implementation hearing, Tina filed a section 388 petition for a return of Stevie to her custody or, alternatively, reinstatement of family reunification services. Tina's petition stated she had obtained stable housing, enrolled in individual counseling in January 2021 and "maintained contact" with Stevie. The court continued the selection and implementation hearing for a contest on April 1, 2021 and said it would consider Tina's section 388 petition on that date.

Due to the COVID-19 emergency and Tina's initial technological difficulties with some aspects of the remote hearings, the section 388 hearing was continued several times and ultimately occurred over two days in July and September 2021. Her counsel stipulated at the outset of the hearing the same evidence offered to support Tina's section 388 petition

7

would also be submitted to support her contention at the selection and implementation hearing the beneficial parental relationship exception to termination of parental rights applied in this case.

Tina testified she returned to counseling in early February 2021 and had completed 25 sessions. She had also completed a parenting class in December 2020, was recently employed and had purchased an automobile, which she believed would eliminate her difficulties with transportation and make visitation with Stevie easier. She had not lived with Gino since September 2020 and had no intention of reuniting with him. She understood Gino was a perpetrator of domestic violence and a danger to her and to her children. Tina recognized her visits with Stevie had been inconsistent in the past, which she attributed to various factors including difficulty with transportation, but insisted she had more recently maintained consistent telephone contact. Stevie referred to her as "mom" and was bonded with her.

The Department and Stevie's counsel urged the court to deny Tina's section 388 petition, arguing Tina had been inconsistent with visitation, even since filing the section 388 petition. Tina's cancellation of visits had caused Stevie great anxiety, for which Tina failed to take any responsibility. Stevie stated in March 2021 that it had been a "long time" since she had seen Tina. The Department and Stevie's counsel also observed Tina had been slow to obtain counseling, having waited until the initial section 366.26 hearing, and had missed the only two on-demand drug tests that she had agreed to in February and March 2021, which the Department identified as a "red flag" for substance abuse. Tina's adult daughter again reported she had seen Gino and Tina together as late as February 2021, after Tina

had filed her section 388 petition; and Sonny told the social worker in March 2021 that he knew Tina and Gino were still in contact even though he could not say for certain they had actually seen each other in person.

The court denied Tina's section 388 petition.  The court credited Tina's new evidence of her recent counseling efforts, new employment and housing, but found them to signify "changing circumstances," not enduring behavior modifications.  The court also found visitation had been inconsistent, even after Tina filed her section 388 petition.  Finally, the court determined neither return of Stevie to Tina's custody nor reinstatement of family reunification services was in Stevie's best interests.  The court explained Stevie was thriving in her maternal aunt's custody, and the maternal aunt wished to adopt her.  "In terms of the best interest of the child, quite a bit of time has elapsed and the need for permanence is there. . . .  It's not to say that the child does not love mother, but the anxiety and frustration of having this ill-defined plan in place which is am I going to be here?  Am I going to be there?"  "I think the best interest is for the child to find some degree of permanence here."

Proceeding to the section 366.26 hearing, the court rejected Tina's argument that the beneficial parental relationship exception to termination of parental rights applied.  The court ruled that not only was Tina's visitation still inconsistent, but also she had not established the type of parental bond that outweighed the permanency and stability that came with adoption.

9

## DISCUSSION

1. *The Court Did Not Err in Denying Stevie's Section 388 Petition*

   a. *Governing law and standard of review*

Section 388 provides for modification of juvenile court orders when the moving party (1) presents new evidence or a change of circumstance and (2) demonstrates modification of the previous order is in the child's best interest. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Y.M.* (2012) 207 Cal.App.4th 892, 919; see Cal. Rules of Court, rule 5.570(e); see also *In re Zacharia D.* (1993) 6 Cal.4th 435, 455 ["'[s]ection 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information"'].)

When, as here, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interest. (*In re Stephanie M., supra*, 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*; *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1123.) Nonetheless, a parent may rebut the presumption that, once family reunification services have been terminated, reunification is not in the child's best interest by showing that circumstances have changed and that the best interest of the child warrants further reunification services. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309; *Stephanie M.,* at p. 317.)

"[B]est interests is a complex idea" that requires consideration of a variety of factors. (*In re Kimberly F.* (1997)

10

56 Cal.App.4th 519, 531; see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832-833.)  In determining whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner.  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

We review the court's decision to grant or deny a section 388 petition based on its best interest finding for abuse of discretion and may disturb the exercise of that discretion only in the rare case when the court has made an arbitrary or irrational determination.  (*In re Stephanie M., supra*, 7 Cal.4th at pp. 318-319; *In re Malick T., supra,* 73 Cal.App.5th at p. 1123; *In re I.B.* (2020) 53 Cal.App.5th 133, 153.)  We do not inquire whether substantial evidence supports the order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court.  (*Stephanie M.*, at p. 319.)  We ask only whether the juvenile court abused its discretion with respect to the order it actually made.  (*In re M.H.* (2018) 21 Cal.App.5th 1296, 1305.)

11

b. *The court did not abuse its discretion in concluding reinstatement of reunification services was not in Stevie's best interest*

Tina contends her substantial participation in counseling, completion of parenting classes and employment since her family reunification services were terminated at the 18-month review hearing plainly constituted a change of circumstance and the court erred in discounting her showing as "changing," but not changed circumstances. We agree Tina presented new and substantial evidence of a change of circumstance. The juvenile court's assessment the new evidence did not establish Tina had ameliorated the problems that led to the dependency (what the court referred to as the difference between changing and changed circumstances) is relevant to the second prong of the section 388 analysis, the "best interest" determination, but not the threshold inquiry whether there is new evidence or a change of circumstance that could support modification of the prior court order. (See generally *In re J.C.* (2014) 226 Cal.App.4th 503, 527; *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 225.)

However, Tina's contention the court abused its discretion in determining reinstatement of family reunification services was not in Stevie's best interest fails. Tina maintains she had addressed all problems leading to the initiation of dependency proceedings: She had left Gino, completed parenting classes and resumed her individual therapy addressing issues of domestic violence. In addition, she emphasizes, Stevie still referred to her as "mom"; they shared a bond; and the monitors all reported the visits were appropriate and that Tina and Stevie were affectionate with each other.

Tina's argument highlights her own testimony while ignoring the court's credibility findings and other evidence the

court found concerning. The paternal aunt and Tina's adult daughter reported seeing Tina with Gino after Tina filed the section 388 petition, and Sonny similarly indicated Tina and Gino were still in contact with each other. The court found Tina's credibility lacking when it came to whether she had had contact, let alone resided, with Gino. Tina had told the Department previously she had left Gino "for good," only to reunite with him for more than a year, at the expense of losing custody of her children. While the court commended Tina for resuming counseling in February 2021, it observed the letter from her therapist detailing her participation and treatment goals spoke generally in "hopeful terms," not specifics that gave the court confidence Tina would be able to resolve the conditions underlying dependency jurisdiction if further reunification services were granted. Meanwhile, Stevie was thriving in the care of her maternal aunt, her prospective adoptive parent.

In challenging the court's ruling, Tina argues her situation is comparable to the mother in *In re J.M.* (2020) 50 Cal.App.5th 833, who successfully appealed the juvenile court's denial of her section 388 petition seeking a return of her child to her custody or additional reunification services in a case involving domestic violence. The juvenile court in *J.M.* credited evidence the mother had completed all court-ordered domestic violence programs, was not in any abusive relationship with any other person and had had no contact with her abuser in the more than a year since her reunification services were terminated, but denied the petition based on a concern about her ability to address her child's special needs. (*Id.* at p. 846.) The *J.M.* court reversed, concluding the juvenile court had improperly focused on speculative matters that were not the subject of dependency jurisdiction while

13

disregarding mother's substantial progress since reunification services had been terminated.  (*Id.* at p. 849.)  *J.M.* does not assist Tina.  Although Tina, like the mother in *J.M.,* had completed domestic violence counseling, she returned to Gino after that counseling was completed in 2019, behavior that had caused the Department to change its recommendation for a return of Tina's children to her custody and for the court to terminate her reunification services in the first place.  Even more concerning to the court, unlike the mother in *J.M.,* who had had no contact with her abusive husband for at least one year, Tina remained in contact with Gino throughout the dependency proceedings, even after Tina filed her section 388 petition; and the court found Tina's no-contact denials during the hearing not credible.  The court's determination the stability Stevie had gained with her prospective adoptive parent would be undermined by further reunification services for Tina, which offered only a speculative benefit, was neither arbitrary nor irrational.  No abuse of discretion occurred.

> 2. *The Court Did Not Err in Concluding the Beneficial Parental Relationship Exception to Termination Did Not Apply*

> a. *Governing law and standard of review*

The express purpose of a section 366.26 hearing is "to provide stable, permanent homes" for dependent children. (§ 366.26, subd. (b).)  Once the court has decided to end parent-child reunification services, the legislative preference is for adoption.  (§ 366.26, subd. (b)(1); *In re S.B.* (2009) 46 Cal.4th 529, 532 ["[i]f adoption is likely, the court is required to terminate parental rights, unless specified circumstances compel a finding that termination would be detrimental to the child"].)

14

Section 366.26 requires the juvenile court to conduct a two-part inquiry at the selection and implementation hearing. First, it determines whether there is clear and convincing evidence the child is likely to be adopted within a reasonable time. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250; *In re D.M.* (2012) 205 Cal.App.4th 283, 290.) Then, if the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates judicial termination of parental rights unless the parent opposing termination can demonstrate one of the enumerated statutory exceptions applies. (§ 366.26, subd. (c)(1)(A) & (B); see *In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).)

One of the statutory exceptions to termination is contained in section 366.26, subdivision (c)(1)(B)(i), which permits the court to order some other permanent plan if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." The exception requires the parent to establish, by a preponderance of the evidence, (1) the parent has maintained regular visitation and contact with the child, "taking into account the extent of visitation permitted"; (2) the child has a substantial, positive, emotional attachment to the parent such that the child would benefit from continuing the relationship; and (3) terminating the relationship "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 636; see *id.* at p. 630 ["[t]he language of this exception, along with its history and place in the larger dependency scheme, show that the exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even

when balanced against the benefits of a new adoptive home, would be harmful for the child"].)  When the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent-child relationship, the court should order adoption.  (*Id.* at p. 634.)  However, "'[i]f severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[]' the child, the court should not terminate parental rights."  (*Id.* at p. 633.)

We review the juvenile court's findings as to whether the parent has maintained regular visitation and contact with the child and the existence of a beneficial parental relationship for substantial evidence.  (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640; see *In re R.V.* (2015) 61 Cal.4th 181, 200-201 ["[t]here is, however, no single formulation of the substantial evidence test for all its applications"; where a party fails to meet its burden on an issue in the juvenile court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the juvenile court could not reasonably reject it"].)  We review the third step—whether termination of parental rights would be detrimental to the child due to the child's relationship with his or her parent—for abuse of discretion.  (*Caden C.*, at p. 640.)

> b. *The court did not abuse its discretion in concluding termination of parental rights would not be detrimental to Stevie*

Tina contends she carried her burden to demonstrate regular visitation with evidence of consistent telephone contact with Stevie.  The court did not rule otherwise, Tina reasons, because, if it had, it would not have reached the question whether

16

termination of parental rights would be detrimental to Stevie. Tina's argument ignores the court's express findings during the section 366.26 hearing[4] as well as those in the section 388 hearing immediately preceding it. Substantial evidence, including Stevie's statements and those by the maternal aunt as to Tina's inconsistent visitation and abbreviated telephone contact, supports that finding.

Moreover, even if Tina demonstrated her regular telephone contact constituted sufficient, consistent visitation during the COVID-19 pandemic, she failed to show termination of parental rights would be detrimental to Stevie. While Stevie loved Tina (and Tina, Stevie), Stevie was thriving in the care of her prospective adoptive parent where she had resided for the last three years. The court found the stability and permanency that adoption would bring to Stevie, who had finally found safety and security in the custody of her prospective adoptive parent, far outweighed any benefit that might exist if parental rights were preserved, particularly in circumstances in which the court had doubts about Tina's commitment to leaving Gino. Tina disagrees, but she has not demonstrated the court's conclusion was arbitrary or irrational, let alone that this case presents the type of "exceptional circumstance" that would warrant departure from the norm of adoption. (*Caden C., supra,* 11 Cal.5th at p. 631 [the parental relationship exception, like the other statutory exceptions to termination of parental rights, is a departure from "'the norm'" of adoption and applies only in "'exceptional circumstances'"]; accord, *In re Celine R.* (2003) 31 Cal.4th 45, 53.)

---

[4]     The court found Tina's inconsistent visitation had "caused great disappointment and frustration to [Stevie] who is seeking to have some measure of permanence."

17

### 4. *As the Department Acknowledges, Remand for ICWA-related Findings Is Required*

ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq. (2022)) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551.)[5] The statute authorizes states to provide "'a higher standard of protection'" to Indian children, their families and their tribes than the rights provided under ICWA. (*In re T.G.* (2020) 58 Cal.App.5th 275, 287-288; see 25 U.S.C. § 1921.) In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

To protect the rights in dependency proceedings guaranteed by ICWA and related state law, the juvenile court and child protective services agencies have "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." (§ 224.2, subd. (a).) The duty to inquire "begins with initial contact [citation] and obligates the juvenile court and

---

[5] "For purposes of ICWA, an 'Indian child' is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe." (*In re T.G.* (2020) 58 Cal.App.5th 275, 287, fn. 10; see 25 U.S.C. § 1903(4) [definition of "'Indian child'"] & (8) [definition of "'Indian tribe'"]; see also Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G., supra,* 58 Cal.App.5th at p. 290; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 429; see § 224.2, subds. (a)-(c).)

In addition, section 224.2, subdivision (e), imposes a duty of further inquiry regarding the possible Indian status of the child "[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine there is reason to know that the child is an Indian child." Rule 5.481(a)(4) provides that further inquiry must be conducted if the social worker "knows or has reason to know or believe that an Indian child is or may be involved." Further inquiry includes, "but is not limited to," interviewing, as soon as practicable, extended family members to gather the biographical information required by section 224.3, subdivision (a)(5), to be included in ICWA notices, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2).) If those inquiries result in reason to know the child is an Indian child, notice to the relevant tribes is required. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3; see *In re J.S.* (2021) 62 Cal.App.5th 678, 686; *In re T.G., supra,* 58 Cal.App.5th at p. 290.)

"The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families." (*In re Antonio R., supra,* 76 Cal.App.5th at p. 430]; accord, *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 ["the agency has a duty to gather information by conducting an initial inquiry,

19

where the other party—here the parent . . . has no similar obligation"]; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["[t]he court and the agency must act upon information received from any source, not just the parent [citations], and the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal"].)

At the initial detention hearing, after Tina and Gino filed ICWA-020 Parental Notification of Indian Status forms indicating they had no Indian ancestry as far as they knew, the court found it had no reason to know that Stevie or her brother was an Indian child. No inquiry was made of the maternal aunt who was present in court at the detention hearing.

At the jurisdiction and disposition hearing the Department reported that Tina and Gino had again been asked in September 2018 and both denied having any Indian ancestry. There was no indication the Department attempted to otherwise comply with its obligation to investigate the children's possible Indian status, nor did the court exercise its responsibility to ensure those additional inquiries had been made. Yet the court again found no reason to know Stevie was an Indian child. The court made the same finding at the section 366.26 hearing based on the findings the court had made at the jurisdiction/disposition hearing. Neither the maternal aunt, with whom Stevie has resided since detention, nor Gino's brother and sister nor any other extended family member of either Tina or Gino was asked about possible Indian ancestry.

Tina argues, and the Department acknowledges, based on our decisions addressing the identical issue (e.g., *In re J.C.* (2022) 77 Cal.App.5th 70, 79-84; *In re Antonio R.*, *supra*, 76 Cal.App.5th

20

at pp. 431-436) that when, as here, the Department and the juvenile court failed to make the required ICWA-related inquiries of available relatives and nothing in the record demonstrates the error was harmless, the appropriate remedy is to conditionally affirm the order terminating parental rights and remand with instructions for the Department and the juvenile court to fully comply with the inquiry and notice provisions of ICWA and California law.

## DISPOSITION

The order denying Tina's request for modification of court order is affirmed. The order terminating parental rights is conditionally affirmed, and the matter is remanded for the Department and the juvenile court to comply with the inquiry and notice provisions of ICWA and California law, including making the appropriate inquiries of the maternal aunt, Gino's siblings and any other reasonably available extended family members. If the court finds Stevie is an Indian child, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law. If not, the court's original section 366.26 order will remain in effect.


PERLUSS, P. J.

We concur:


SEGAL, J.          FEUER, J.


21